UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KRISTINA H.,[1]

                      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

DECISION & ORDER

20-CV-1873MWP

## PRELIMINARY STATEMENT

Plaintiff Kristina H. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Supplemental Security Income and Disability Income Benefits ("SSI/DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 11). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and
>
> (5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 12-21). Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 10, 2016, the application date. (Tr. 14). At step two, the ALJ concluded that plaintiff had the severe impairments of spine disorders; thyroid gland disorder; other and unspecified arthropathies; chronic obstructive pulmonary disease ("COPD"); depressive, bipolar and related disorders; anxiety; and, obsessive compulsive disorder ("OCD"). (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (Tr. 15-16). With respect to plaintiff's mental limitations, the ALJ found that she suffered from moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (*Id.*). The ALJ concluded that plaintiff had the RFC to perform light work, but was limited to work involving no production rate pace (assembly line work) or operation of employer vehicles, and requiring her to understand, remember, and carry out only simple instructions, to make only simple work-related decisions, to adjust to few changes in a routine work setting, and to have only frequent interaction with supervisors and occasional interaction with coworkers and the public. (Tr. 16-19). The ALJ also found that plaintiff should not be exposed to crowds, temperature extremes, pulmonary irritants, poor ventilation, or workplace hazards and that she

would be off task ten percent of the workday due to attention and concentration lapses, the need to alternate positions, and/or the need to use the bathroom. (*Id.*). At steps four and five, the ALJ determined that plaintiff was unable to perform her past relevant work but that other jobs existed in the national economy that plaintiff could perform, including the positions of laundry sorter routing, clerk merchandise, and marker. (Tr. 19-21). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### III. Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9-1, 13). Plaintiff maintains that the ALJ's RFC assessment contains "highly specific" limitations that are unsupported by any medical opinion evidence and are based upon the ALJ's own lay opinion. (*Id.*).

### IV. Analysis

Having carefully reviewed the ALJ's decision, I agree with plaintiff that the ALJ's determination was flawed, albeit on grounds not specifically identified by plaintiff. In his decision, the ALJ failed to consider plaintiff's pelvic and endometriosis impairments at step two and throughout the remainder of the sequential evaluation. For the reasons discussed below, this error requires remand.

At step two of the evaluation, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(a)(4)(ii), (c). "An impairment or combination of

impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (quoting *Ahern v. Astrue*, 2011 WL 1113534, *8 (E.D.N.Y. 2011)); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimus* limitation to a claimant's physical or mental ability to do basic work activities"). "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quotations omitted). "An error at step two – either a failure to make a severity determination regarding an impairment, or an erroneous determination that an impairment is not severe – can be harmless error if the ALJ continues the analysis and considers all impairments in his RFC determination." *Zochios v. Berryhill*, 2018 WL 1835451, *3 (W.D.N.Y. 2018) (quotations and brackets omitted). Nevertheless, "[r]emand is required if the ALJ fails to account for the claimant's nonsevere impairments when determining her RFC." *Id.*

In connection with her application for benefits, plaintiff reported that she suffered from, among other impairments, pelvic inflammatory disease and endometriosis, both of which limited her ability to work. (Tr. 241). During the administrative hearing, plaintiff's attorney identified chronic pain syndrome and chronic abdominal pain as relevant impairments, and, when questioned about which medical diagnoses precluded her from working, plaintiff testified that she suffered from debilitating pelvic inflammatory disease, which she associated with endometriosis and her previous hysterectomy surgeries. (Tr. 43, 52). Plaintiff further testified

that scar tissue from her several hysterectomy-related surgeries caused her to suffer from pelvic pain.  (Tr. 62).

Review of plaintiff's medical records demonstrates that she was diagnosed with chronic pelvic pain, chronic abdominal pain, and endometriosis, and received ongoing treatment to address her pelvic and/or abdominal pain.  (Tr. 336-40, 341-73, 412-50, 578-633, 644-59).  To address these impairments, plaintiff treated with several pain management specialists throughout the relevant period.  (Tr. 341-73, 412-50, 578-633, 644-59).  She frequently reported suffering from severe abdominal pain, which was aggravated by physical activity, interfered with her ability to sleep, and for which she was prescribed several different medication regimens including fentanyl, methadone, Dilaudid, Duragesic, and medical cannabis.  (*Id.*).

Despite the substantial record evidence relating to plaintiff's pelvic and abdominal pain disorders, the ALJ's decision lacks any mention of these impairments.  The ALJ did not consider them at step two, did not discuss them in connection with his RFC analysis, and did not incorporate any limitations to accommodate these impairments when formulating the RFC.  Because the ALJ failed to consider these impairments throughout the sequential evaluation, I find that remand is warranted.  *See Childs v. Colvin*, 2016 WL 1127801, *4 (W.D.N.Y. 2016) ("[t]he ALJ's failure to consider plaintiff's schizoaffective disorder at both steps two and three of the sequential evaluation process constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application"); *Jelliffe v. Astrue*, 2012 WL 2047497, *6 (D. Vt.) ("where the omitted impairment was not accounted for in the ALJ's RFC determination, or in other words, where the ALJ's step-two error prejudiced the plaintiff at later steps in the sequential evaluation process, remand is required"), *report and recommendation adopted by*, 2012 WL 2047499 (D. Vt. 2012); *Swanson v. Astrue*,

2011 WL 2582617, *8 (D. Vt. 2011) ("there is no indication that the ALJ considered [plaintiff's] borderline intelligence, borderline personality disorder, and PTSD in assessing her RFC, or at any other stage in the sequential evaluation process[;] [t]herefore, the [c]ourt cannot conclude that [plaintiff] was not prejudiced by the ALJ's step two error, and finds that the error was not harmless").

Having concluded that remand is required for the ALJ's step two error, I need not address any other specific challenges to or perceived deficiencies in the ALJ's decision. That said, I address several additional issues briefly for the benefit of the proceedings on remand. First, I find that the ALJ failed to apply the appropriate legal standards in assessing plaintiff's subjective complaints of pain. "Evidence of pain is an important element in the adjudication of DIB and SSI claims, and must be thoroughly considered in calculating the RFC of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (summary order). Pursuant to applicable regulations, the ALJ must evaluate a claimant's subjective complaints of pain through consideration of a variety of factors including the claimant's daily activities, the location, duration, frequency, and intensity of his or her pain, precipitating and aggravating factors, the type, dosage, and effectiveness of medications, other treatments or measures employed to alleviate symptoms, and other factors concerning the claimant's functional limitations and restrictions due to pain. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 416.929(c)(3)). In his decision, the ALJ failed to address the applicable factors and to explain adequately his credibility determination.[2] *See Spear v. Astrue*, 2014 WL 4924015, *20 (W.D.N.Y. 2014).

---

[2] The treatment records suggest that plaintiff's neck and back pain may have a myofascial component, and her attorney informed the ALJ that she suffered from chronic pain syndrome. Many of her treatment notes contain physical examination findings of myofascial tenderness or trigger points, and she was assessed to suffer from
(*Continues on next page*)

Additionally, the ALJ failed to articulate sufficiently his reasons for finding unpersuasive the medical opinions of record, particularly those of plaintiff's treating sources. *See Lisa T. v. Kijakazi*, 2022 WL 2207613, *6 (D. Conn. 2022) ("[t]he absence of [a] clear discussion of the evidence implicating the supportability or consistency (or lack thereof) of [medical opinions] frustrates meaningful review") (internal quotations omitted). First, the ALJ's analysis of the opinions in the record appears inconsistent. The ALJ found the opinions of the state consulting physicians, which generally assessed minimal functional limitations, to be unpersuasive based on plaintiff's physical and mental examinations demonstrating abnormal findings such as anxiety, depression, panic attacks, limited range of motion, slightly antalgic gain, and reduced sensation. (Tr. 19). Yet, the ALJ found the opinions of plaintiff's treating providers, which generally assessed greater limitations, to be unpersuasive based upon physical and mental examinations demonstrating normal findings such as normal gait, stance, tone, and strength, and normal memory, concentration, and cooperation. (*Id.*). Further, in citing the examination findings, the ALJ seemingly cited only those notes that supported his conclusion and ignored others that demonstrated abnormal findings. Compounding this error, some of the treatment notes relied upon by the ALJ as demonstrating normal findings also demonstrated abnormal findings; the abnormal findings were not mentioned by the ALJ. For example, the ALJ determined that the opinion of plaintiff's pain management specialist Billy Carstens, DO, was not persuasive because some physical examinations demonstrated normal gait, stance, tone, and strength. (*Id.*). Some of the treatment notes he cited in support, however, also contained several abnormal findings. (*See, e.g.*, Tr. 449-50 (range of motion limitations, decreased sensation,

---

"[m]yofascial pain disorder of the lumbosacral and abdominal region," "fibromyositis," and "myofascial pain." (*See, e.g.*, Tr. 413, 416, 421, 423, 425, 427, 429, 721, 722, 723, 724, 726). On remand, the ALJ should consider whether plaintiff suffers from an impairment involving myofascial pain.

slightly antalgic gait, diminished squat, tenderness to palpation, positive seated flexion test and Patrick test), 632 (decreased range of motion, decreased sensation, slightly antalgic gait, diminished squat, tenderness to palpation, positive seated flexion test and Patrick test), 644 (myofascial pain in cervical and lumbar spine, slightly tender abdomen), 725 (myofascial pain in cervical and lumbar spine, slightly tender abdomen), 1177 (myofascial pain in cervical and lumbar spine, slightly tender abdomen). The ALJ did not acknowledge or address these abnormal findings or explain why they were inconsistent with or failed to support the limitations assessed by Carsten.

Finally, the ALJ's decision suggests that he may have formulated the RFC based upon his own surmise and lay opinion. "The Commissioner's new regulations do not alter the ALJ's obligations to provide sufficient reasoning for the court to engage in meaningful appellate review, . . . and to reach an RFC determination based upon all the evidence in the record." *Lisa E. v. Comm'r of Soc. Sec.*, 2021 WL 4472469, *6 (W.D.N.Y. 2021) (internal quotations and alterations omitted). The decision fails to articulate the ALJ's analysis – particularly the connection between the record evidence and the RFC limitations he assessed – in a way that permits meaningful review. *See Frost v. Comm'r of Soc. Sec.*, 2020 WL 4333335, *6 (W.D.N.Y. 2020) ("[e]ven though [the ALJ] rejected all favorable opinions . . . it is evident from the RFC that [the ALJ] still believed that plaintiff had non-exertional limitations . . . without more of an explanation, it is not evident what record evidence [the ALJ], as a lay person, relied upon in formulating those portions of the RFC").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                                              *s/Marian W. Payson*
                                                            MARIAN W. PAYSON
                                               United States Magistrate Judge

Dated: Rochester, New York
         February 13, 2023